NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

|  |  |  |
|---|---|---|
| **ROBERTO MORAES,** | : | |
| | : | **Civil Action No. 14-3040** |
| *Plaintiff,* | : | |
| | : | **OPINION** |
| | : | |
| **v.** | : | **June 30, 2015** |
| | : | |
| **CAROLYN W. COLVIN,** | : | |
| **Acting Commissioner of Social Security,** | : | |
| | : | |
| *Defendant.* | : | |

_____ :

**ARLEO, UNITED STATES DISTRICT JUDGE**

Before this Court is Plaintiff Roberto Moraes' request for review, pursuant to 42 U.S.C. §§ 1383(c)(3), 405(g), of the Commissioner of Social Security Administration's ("Commissioner") denial of Plaintiff's application for Disability Insurance Benefits ("DI"). Plaintiff argues that (1) the Commissioner failed to consider all of the evidence; (2) whether the combination of Plaintiff's spinal disc disease and Parkinson's disease met or equaled a listed impairment was not adequately considered; (3) Plaintiff's testimony was not adequately considered; and (4) the Commissioner failed to establish that a significant number of jobs are currently available for Plaintiff. For the reasons set forth in this Opinion, the Court finds that the Commissioner's decision is supported by substantial evidence and therefore must be **AFFIRMED**.

## I. STANDARD OF REVIEW AND APPLICABLE LAW

### A. Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). This Court must affirm the Commissioner's decision if there exists substantial evidence

to support the decision.  42 U.S.C. § 405(g); Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir. 2003).

Substantial evidence, in turn, "means such relevant evidence as a reasonable mind might accept as

adequate."  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  Stated differently, substantial

evidence consists of "more than a mere scintilla of evidence but may be less than a preponderance."

McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).

"[T]he substantial evidence standard is a deferential standard of review."  Jones v.

Barnhart, 364 F.3d 501, 503 (3d Cir. 2004).  Accordingly, the standard places a significant limit

on the district court's scope of review: it prohibits the reviewing court from "weigh[ing] the

evidence or substitut[ing] its conclusions for those of the fact-finder."  Williams v. Sullivan, 970

F.2d 1178, 1182 (3d Cir. 1992).  Therefore, even if this Court would have decided the matter

differently, it is bound by the ALJ's findings of fact so long as they are supported by substantial

evidence.  Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012) (quoting Fargnoli v.

Massanari, 247 F.3d 34, 35 (3d Cir. 2001)).

In determining whether there is substantial evidence to support the Commissioner's

decision, the Court must consider: "(1) the objective medical facts; (2) the diagnoses of expert

opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective

evidence of pain testified to by the Plaintiff and corroborated by family and neighbors; and (4) the

Plaintiff's educational background, work history, and present age."  Blalock v. Richardson, 483

F.2d 773, 776 (4th Cir. 1973).

**B.  The Five-Step Disability Test**

In order to determine whether a Plaintiff is disabled, the Commissioner must apply a five-

step test.  20 C.F.R. § 404.1520(a)(4).  First, it must be determined whether the Plaintiff is currently

engaging in "substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(i).  "Substantial gainful

2

activity" is defined as work activity, both physical and mental, that is typically performed for either profit or pay. 20 C.F.R. § 404.1572. If it is found that the Plaintiff is engaged in substantial gainful activity, then he or she is not disabled and the inquiry ends. Jones, 364 F.3d at 503. If it is determined that the Plaintiff is not engaged in substantial gainful activity, the analysis moves on to the second step: whether the claimed impairment or combination of impairments is "severe." 20 C.F.R. § 404.1520(a)(4)(ii). The regulations provide that an impairment or combination of impairments is severe only when it places a significant limit on the Plaintiff's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimed impairment or combination of impairments is not severe, the inquiry ends and benefits must be denied. Id.; Ortega v. Comm'r of Soc. Sec., 232 F. App'x 194, 196 (3d Cir. 2007).

At the third step, the Commissioner must determine whether there is sufficient evidence showing that the Plaintiff suffers from a listed impairment or its equivalent. 20 C.F.R. § 404.1520(a)(4)(iii). If so, a disability is conclusively established and the Plaintiff is entitled to benefits. Jones, 364 F.3d at 503. If not, the Commissioner must ask at step four whether the Plaintiff has residual functional capacity ("RFC") such that he is capable of performing past relevant work; if that question is answered in the affirmative, the claim for benefits must be denied. Id. Finally, if the Plaintiff is unable to engage in past relevant work, the Commissioner must ask, at step five, "whether work exists in significant numbers in the national economy" that the Plaintiff is capable of performing in light of "his medical impairments, age, education, past work experience, and 'residual functional capacity.'" 20 C.F.R. §§ 404.1520(a)(4)(iii)-(v); Jones, 364 F.3d at 503. If so, the claim for benefits must be denied. The Plaintiff bears the burden of establishing steps one through four, while the burden of proof shifts to the Commissioner at step five. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Under 42 U.S.C. § 405(g) and Third Circuit precedent, this Court is permitted to "affirm, modify, or reverse the [Commissioner's] decision with or without a remand to the [Commissioner] for a rehearing." Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984); Bordes v. Comm'r of Soc. Sec., 235 F. App'x 853, 865-66 (3d Cir. 2007). While an outright reversal with an order to award benefits is permissible in the presence of a fully developed record containing substantial evidence that the Plaintiff is disabled, the Court must order a remand whenever the record is incomplete or lacks substantial evidence to justify a conclusive finding at one or more of the five steps in the sequential analysis. See Podedworny, 745 F.2d at 221-22.

## II. BACKGROUND

### A. Procedural History

Plaintiff filed an application for Disability Insurance Benefits on February 9, 2011. Tr. 169-70, 198. He was denied benefits initially on June 2, 2011, and was also denied after reconsideration on September 9, 2011. Tr. 96, 102. Plaintiff sought review before administrative law judge the Honorable Michael L. Lissek (the "ALJ"). Tr. 27-49, 50-71. Hearings occurred on September 6, 2012, and January 16, 2013. Id. The ALJ affirmed the decision to deny benefits, finding that Plaintiff was not able to perform past relevant work, but that Plaintiff's Residual Functional Capacity ("RFC") enabled him to work in a significant number of jobs regionally and nationally. See Tr. 18-22. Plaintiff sought review before the Appeals Council, and was denied on April 11, 2014. Tr. 1. Having exhausted his administrative remedies, the instant action was timely filed on May 13, 2014. Dkt. No. 1, Compl.

### B. Factual Background

Plaintiff is a 54-year-old man who applied for Disability Benefits based on an accident that occurred on July 31, 2008. Tr. 198. Plaintiff claims that he suffers from spinal disc disease and

symptoms of Parkinson's disease.  Tr. 237.  Plaintiff injured his back after falling while working as a truck driver.  Tr. 241-42.  An examination performed by Dr. Jacqueline Brunetti on July 31, 2008, found no indications of fractures of the spine following an x-ray, but a later MRI performed by Dr. Alan Wasserman found evidence of damage to the spinal discs in both the neck and lower back.  See Tr. 241-44.  Plaintiff was treated by Dr. Warren Bleiweiss from 2008 to 2009 with a combination of physical therapy and injections for pain management.  Tr. 245-46, 301-08.  He was seen by Dr. Carl Giordano for a final follow up on February 3, 2010.  Tr. 313.  Dr. Giordano noted symptoms consistent with Parkinson's disease, but recommended no further treatment for the work-related injury, and encouraged Plaintiff to see a private neurologist for examination of his Parkinson's symptoms.  Id.

Plaintiff was apparently unable to secure further treatment for his back, and returned to Brazil, where he was born, to have back surgery on May 18, 2010, and November 11, 2010.  See Tr. 267-81; translated in Tr. 316-30.  He returned to the United States and filed for Disability Insurance Benefits on February 9, 2011.  Tr. 169-70.  At the request of his counsel, Plaintiff was seen by Paul F. Fulford, Ph.D., for a psychological evaluation on February 14, 2011.  Tr. 247.  Dr. Fulford reported that Plaintiff was oriented and alert and had an IQ in the normal range.  Tr. 248-49.  He diagnosed Plaintiff with adjustment disorder and assigned him a global assessment of functioning ("GAF") score of 65, indicating that Plaintiff suffered from some mild depressive symptoms.[1]  Id.

---

[1] Dr. Fulford used the DSM-IV multiaxial scale for his diagnosis.  Axis I deals with clinical disorders; Axis II deals with personality disorders; Axis III deals with general medical conditions; Axis IV deals with psychosocial and environmental problems; and Axis V deals with the person's GAF.  The Court notes that DSM-IV was supplanted by DSM-5 on May 18, 2013, and DSM-5 no longer uses the multiaxial system.  At the time of Dr. Fulford's examination, the multiaxial system was widely accepted as the best tool for assessment of mental disorders.

On February 18, 2011, Plaintiff was seen by Dr. I. Ahmad for a physical examination. Tr. 250-51. Dr. Ahmad diagnosed Plaintiff with spinal sprain, Spondylosis, and residuals from spinal surgery and concluded that Plaintiff was totally disabled. Id. An examination by Dr. Cheryl Wong on April 11, 2011, also concluded that Plaintiff was totally disabled due to symptoms resulting from his work injury and depression related to his illness. See Tr. 276-80.

Plaintiff was seen by Dr. Justin Fernando on May 10, 2011, for an examination at the request of the New Jersey Division of Disability Services. Tr. 260-64. Dr. Fernando found no evidence of serious physical injuries beyond reduced grip and pinch strength in the left hand, and no evidence of Parkinson's-like symptoms. Id. He concluded that the examination appeared to be nearly normal.[2] Id. Plaintiff was then seen by Dr. Oleg Frank, a primary care physician, who noted tremors and rigidity, referred Plaintiff to a neurologist, and prescribed medication to treat the symptoms. Tr. 283-85.

Plaintiff went to the University Hospital for further examination, where he was seen by Dr. Dimitrios Giannakidis on September 27, 2012. Tr. 291-93. Dr. Giannakidis noted tremors on the patient's left side, but found no memory issues and no major physical problems. Id. Over the course of several follow-up visits, Plaintiff's medication dosage was increased. On October 26, 2012, an MRI scan of the brain indicated no abnormalities. Tr. 293-96.

C. The ALJ's Decision

In his January 31, 2013, decision, the ALJ first noted that Plaintiff was not engaging in substantial gainful activity from July 31, 2008, until December 31, 2012, when Plaintiff last met

---

[2] Dr. Fernando claimed that the Plaintiff was falsely reducing the range of motion in the left shoulder and grip strength in the left hand. He supported his claim by citing no measureable differences in muscle mass or other objective measurements to support the supposed reduction in range of motion or grip strength. Tr. 262.

6

the insured status requirement.  Tr. 18.  The ALJ further found that Plaintiff was suffering from the following severe impairments: (1) sequelae resulting from his work accident in July 2008, (2) Parkinson's disease, and (3) adjustment disorder secondary to his medical condition.  Id.

Having found that Plaintiff met steps one and two of the analysis, the ALJ determined that Plaintiff's impairments, singly or in combination, did not meet or equal a listed impairment per step three.  Tr. 19.  The ALJ specifically considered Listings 1.04 (disorders of the spine) and 11.06 (Parkinson's disorders), noting that a careful review of the record did not contain specific findings that match any of the impairments listed.  Id.  The ALJ found no evidence of spinal stenosis, nerve root, or spinal cord compression as required by Listing 1.04, and did not find indications that Plaintiff had significant rigidity, bradykinesia, or tremors in two extremities, as required by Listing 11.06.  Id.  The ALJ also analyzed Plaintiff's mental impairment under Listing 12.04, finding that Plaintiff did not meet the criteria of "paragraph B" or "paragraph C" of that listing.  See Tr. 19-20.

The ALJ then proceeded to Plaintiff's RFC determination.  He found that Plaintiff was able to perform light work, as defined at 20 C.F.R. § 404.1567(b), with additional limitations.  Tr. 20.  The RFC limited Plaintiff to lift and/or carry 20 pounds occasionally, 10 pounds frequently, and to stand or walk 6 hours in a day.  Id.  Furthermore, due to the diagnosed adjustment disorder, Plaintiff is limited to work that can be learned in one month or less and only requires simple instructions.  Id.  Plaintiff can use his hands for gross or fine movement frequently but not continuously.  Id.

The ALJ stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with objective medical evidence" during his analysis of Plaintiff's RFC.  Id.  He cited the psychological evaluation of Dr. Fulford as evidence that Plaintiff

was not mentally impaired and did not have any psychiatric problems, with the exception of the diagnosed adjustment disorder.  Id.  The ALJ went on to acknowledge the presence of some tremors and rigidity in Dr. Frank's examination of Plaintiff, but countered with the later examination by Dr. Fernando which showed no evidence of neurological problems with the exception of reduced grip strength.  This finding was accommodated in the RFC.  Id.

Plaintiff's testimony regarding the worsening of his Parkinson's at the supplemental hearing was given "little weight" by the ALJ because of the lack of any medical documentation to support the worsening symptoms.  Id.  Finally, the ALJ gave no weight to the examination by Dr. Wong which found that Plaintiff was totally disabled because the examination was ordered by Plaintiff's attorney for the purposes of worker's compensation.

At step four, the ALJ found that Plaintiff's RFC prevented him from engaging in his past relevant work as a truck driver.  Id.  Moving to step five, the ALJ found sufficient jobs in both the regional and national economy for Plaintiff to perform.  Tr. 22.  A vocational expert was consulted and testified that a person with the Plaintiff's RFC and attributes, such as education and previous work history, would be able to find work as a can filling and closing machine tender, folding machine operator, and cafeteria attendant.  Id.; see also Tr. 214.  The vocational expert testified that 38,200 regional and 147,000 national jobs were available to Plaintiff.  Tr. 214.  These amounts clearly meet the "significant numbers" requirement of step five.  See Craigie v. Bowen, 835 F.2d 56, 58 (3d Cir. 1987) (finding 200 total regional jobs to be "clear indication" that significant work exists in the national economy).  The ALJ concluded that Plaintiff was not disabled.  Tr. 23.

### III.  DISCUSSION

#### A.  The ALJ's Step Three Analysis

Plaintiff argues that the combination of his spinal disc disease and Parkinson's-related symptoms is the medical equivalent of a listed impairment found in the regulations, making him disabled.  Plaintiff also argues that a medical expert should be consulted to determine whether Plaintiff's combined symptoms meet a listed impairment.  The Court disagrees.

Plaintiff does not identify what combination of impairments is the medical equivalent of a listed impairment.  Without further detail, the Court does not find that Plaintiff meets the burden of proof for his argument.   Additionally, the ALJ explicitly stated that he considered the impairments singly and in combination and found that they did not meet any listed impairment.  Tr. 21.  The Court has no reason to doubt this.  See Morrison v. Comm'r of Soc. Sec., 268 F. App'x 186, 189 (3d Cir. 2008) (stating that without further evidence a court has no reason to doubt an ALJ that explicitly states he considered impairments in combination).  The ALJ cited both Dr. Fernando's and Dr. Fulford's positive examinations as support for his findings.  Tr. 19.  Plaintiff's argument here is unconvincing.

Plaintiff's alternate argument, that the ALJ was required to call a medical expert, is also mistaken.  Per Social Security Ruling ("SSR") 96-6p, when new evidence is not presented, a medical expert must be called by the ALJ only if, in their opinion, the evidence in the record suggests that a judgment of equivalence to a listed impairment may be reasonable.[3]  SSR 96-6p, 61 Fed. Reg. 34466, 34468 (Jul. 2, 1996).

---

[3] Plaintiff's counsel acknowledged that no new relevant evidence was being presented. Tr. 60.

The ALJ was not required to call a medical expert here.  Plaintiff provides no evidence showing a judgment of equivalence is reasonable.  Indeed, Plaintiff did not discuss what combination of his symptoms would meet any of the listed impairments.[4]  The ALJ rejected equivalence, relying on substantial evidence, namely: (1) Dr. Fernando's examination, and (2) the reports of Dr. Jacknin and Dr. Rampello, both of whom reviewed Plaintiff's record and found no equivalence to a listed impairment.  Tr. 19; see Tr. 77, 87, 262.

As discussed above, Plaintiff has the burden of establishing step three, and failed to do so here.  See Bowen, 482 U.S. at 146 n.5.  The ALJ's step three determination was supported by substantial evidence.

### B.  The ALJ's RFC Determination

#### 1.  Consideration of Relevant Evidence

Plaintiff claims that the ALJ did not consider all of the relevant evidence.  Specifically, Plaintiff alleges that the ALJ did not mention either the Brazilian back surgery records or Plaintiff's treatment records at University Hospital, and unfairly dismissed the examination of Plaintiff by Dr. Wong.  These arguments are unpersuasive.

An ALJ must consider all relevant evidence when determining the RFC of a Plaintiff.  Fargnoli v. Massanari, 247 F.3d 34, 41 (3d Cir. 2001).  However, Plaintiff still has the burden of supporting their alleged RFC limitations.  See Bowen, 482 U.S. at 146 n.5.  In addition, even if the ALJ erred, a remand is not necessary if it would not affect the outcome of the case.  See Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005).

---

[4] Plaintiff also argues that his testimony regarding the worsening of his Parkinson's symptoms was inadequately considered, and that the testimony indicated a need for a consultation by a medical expert.  This argument is not convincing because the ALJ explicitly considered the testimony and gave it little weight on credibility grounds because of the lack of supporting evidence.  Tr. 21.

Plaintiff does not explain how either the back surgery records or the University Hospital records would affect the RFC determination. The record of the back surgery was originally submitted in Portuguese and was discussed and orally translated in part during the initial hearing before the ALJ. See Tr. 35-38, 267-81.[5] The ALJ explicitly mentions the surgery as part of the evidence he considered in his step two finding, indicating that he was aware of, and considered, the surgery during his analysis. Tr. 18. Furthermore, the translated report indicates nothing more than successful cervical and lumbar surgery with good post-operation progress. Tr. 330. It is unclear, and Plaintiff does not explain, how this information would change the ALJ's decision even if it was not initially considered by the ALJ.

The treatment records from University Hospital were not explicitly mentioned by the ALJ in his opinion. But, none of these records supports Plaintiff's argument. Dr. Giannakidis' evaluation of Plaintiff only indicates possible Parkinson's disease combined with the already known spinal issues. Tr. 228. Plaintiff demonstrated good mental status, repetition, and recall during the exam. Id. There were indications of tremors on the left side, but no reflex or motor issues were noted, and the report of tremors conflicts with other examinations. Id.; see Tr. 262. An MRI of the brain showed no indications of any abnormalities besides inflammatory sinus disease. Tr. 232.

The ALJ's RFC was made "after careful consideration of the entire record." Tr. 19. Plaintiff has the burden to prove that any undiscussed evidence would warrant additional limitations. See Bowen, 482 U.S. at 146 n.5. Plaintiff makes no argument to that effect.

---

[5] At that hearing, Plaintiff's counsel was asked if he wanted any further translation of the surgery notes for the record. He replied no. Tr. 38. Plaintiff's counsel submitted a translation of the back surgery record to the Appeals Council, which accepted it into the record as exhibit 16F. Tr. 4.

The ALJ stated that he would not give any weight to Dr. Wong's examination because the exam was requested by Plaintiff's attorney for the specific purpose of a worker's compensation assessment.  Tr. 21.  The Court will not overturn the ALJ's credibility determination.  Dr. Wong did not have an ongoing relationship with Plaintiff, and even treating physician's opinions are not automatically given dispositive weight on a disability determination.  See 20 C.F.R. § 1457(b).  The ALJ's decision to discount Dr. Wong's examination is also supported by other medical evidence that contradicted Dr. Wong's findings, such as Dr. Fernando's examination.  See Tr. 228, 262.

Since none of the evidence cited would affect the ALJ's final decision—Plaintiff fails to argue otherwise—the Court finds that the ALJ's RFC determination was supported by substantial evidence.

### 2. Inclusion of More Severe Grip Strength Limitation

Plaintiff argues that the ALJ should have found a more severe grip strength limitation.[6] This argument is unpersuasive.  Plaintiff presents no evidence which supports additional limitations, and does not advance any new arguments.[7]  The ALJ acknowledged the reduced grip and pinch strength noted by Dr. Fernando and reduced Plaintiff's RFC accordingly.  Tr. 21.  The Court finds that the ALJ's decision regarding Plaintiff's limitation on hand usage is supported by substantial evidence.

---

[6] This argument was characterized as a step five challenge, but the issue is whether the ALJ should have added an additional limitation to the Plaintiff's RFC.  Thus, this issue is more appropriately analyzed under the ALJ's RFC determination.

[7] The evidence which the ALJ did not extensively discuss provides no support for Plaintiff's claim of reduced grip or pinch strength.  The University Hospital record contains a note that states that Plaintiff was falsely decreasing strength on his left side, which is consistent with Dr. Fernando's findings.  See Tr. 228.  Dr. Wong's examination also makes no mention of reduced grip or pinch strength.  See Tr. 334-35.  As before, Plaintiff fails to meet his burden.

**IV.** **CONCLUSION**

The Court finds that the ALJ's decision is supported by substantial evidence, and accordingly

**AFFIRMS** the Commissioner's disability determination.

/s *Madeline Cox Arleo*
**HON. MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**